BATCHELOR et al., Respondents v. EMERY, Appellant

(71 N. W.2d 615)

(File No. 9411. Opinion filed August 3, 1955)

640

**M. Q. Sharpe, John W. Larson,** Kennebec, for Plaintiffs and Respondents.

**C. E. Talbott,** Winner, **G. F. Johnson,** Gregory, for Defendant and Appellant.

RUDOLPH, J. The plaintiff seeks to have a certain land contract cancelled and the rights and equities of the parties determined. The defendant by answer asks for

specific performance of the contract. The trial court by judgment cancelled the contract and defendant has appealed.

Defendant presented no testimony. The basis upon which the trial court decreed cancellation of the contract was the failure of defendant to acquire and transfer to plaintiff certain land. It is appellant's view that the contract did not require that he acquire and transfer this land to respondent. Appellant contends all that was required was payment in cash which was tendered.

The result in this court requires a consideration of the relevant portions of the written contract. We are permitted so far as may be requisite for aid in construction and interpretation of this contract to give consideration to the facts and circumstances antecedent to and attendent upon its execution and delivery. Western Building Co. v. J. C. Penney Co., 60 S.D. 630, 245 N.W. 909.

In 1947 the plaintiff Batchelor was the owner of certain land in Todd County. This land was a well improved farm and close to a school. It appears that defendant was desirous of acquiring this farm. Plaintiff also owned a ranch in Mellette County. Adjoining this ranch on the west was land described in the record as Rises in Air land which was owned by Mrs. Bordeaux. This was Indian land and any sale had to be approved by the Indian Department. The defendant is part Indian and was apparently eligible to make application for the purchase of the Bordeaux land. Prior to the execution of the contract plaintiff and defendant went to see Mrs. Bordeaux and defendant agreed to give her the appraised value of this land which was $1,920, to which she agreed if defendant would also give her a certain saddle. The agency officials gave approval to this deal between Mrs. Bordeaux and the defendant but some detail was required before the purchase could be finally consummated. Prior to the execution of the contract, plaintiff had told defendant that he would sell his Todd County farm to defendant if he could get some more land. Defendant knew that plaintiff was especially interested in this Bordeaux land and hence the conversations with Mrs. Bordeaux. Following this talk with Mrs. Bordeaux the contract for the sale of the Todd

County farm to defendant was entered into. The material parts of this contract are as follows: The plaintiff agreed to sell and the defendant agreed to buy the Todd County farm. The defendant agreed to pay therefor the sum of $13,680 as follows:

$1,750 at the execution of the contract on the 17th day of June 1947;

$3,250 on August 1st, 1947 when possession of the farm was to be delivered to defendant;

$1,446.67 on the 1st day of November for the years 1947 to 1952, both dates inclusive.

Regarding the Bordeaux land the contract provided:

"It is understood and agreed that the purchaser has purchased the Rises in the Air Allotment from Mrs. Felix Bordeaux, subject to approval by the Indian Department, and described as the East Half of Section Sixteen and the West Half of Section Fifteen, in Township Forty-three (43) North, Range Thirty (30) West of the 6th. P. M. in Mellette County, South Dakota, and if and when the purchaser obtains approved title to said land, the owners agree to pay therefor the sum of Three thousand ($3000.00) Dollars, and credit said amount as payment under this contract when so deeded to them, and said purchaser under this contract so agrees to sell said land to the Owners under this contract if and when he gets title thereto."

The contract also referred to two other tracts of land which plaintiff agreed to purchase from defendant for certain stipulated amounts "if he (defendant) obtains title thereto." There was the further provision "that the titles to the foregoing lands, or either of them, must be consummated and completed during the lifetime of this contract" and the further provision with regard to the Bordeaux land "that if the said Clarence Emery (defendant) for any reason, is unable to convey said land and has the right to lease the same, he agrees to lease the same to said Elmer Bachelor (plaintiff) for a period of five years after the termination of the present lease thereon, at the regular appraisal fee made by the Indian Department." The contract was

duly executed and defendant made the first payment. Defendant obtained possession of the farm August 1st, 1947, and paid the payment of $3,250 some days thereafter. Thereafter, defendant failed to make his payments as required by the contract but made some payments during the years 1948 and 1949 but never made the payments due on November 1, 1949 and thereafter.

Defendant did not follow through with his application to buy the Bordeaux land in 1947. The testimony is to the effect that an approval of the deal made with Mrs. Bordeaux by Department officials was largely a matter of form. During the first part of the year 1950 after the price of land had advanced Mrs. Bordeaux increased her price for the land and demanded an additional $1,180. Defendant contacted plaintiff and plaintiff advanced this $1,180, a part of which was paid to Mrs. Bordeaux. Again defendant failed to follow-through with his application, and in June 1951 he cancelled his priority assignment to this Bordeaux land without advising plaintiff.

The trial court found in effect that defendant acted in bad faith toward plaintiff in his actions regarding the Bordeaux land. This finding is amply supported by the record. It appears that it was defendant's purpose to get plaintiff to allow him a larger amount for this land than the $3,000 stipulated in the contract. On one occasion he wrote plaintiff he could sell the land for $6,400, and when asked as a witness concerning this he said, "I was just running a bluff to make Batchelor allow that."

The trial court further found:

"That the provisions relative to the Rises in Air allotment contained in the Contract Exhibit 'A' were both important and substantial obligations of said contract and reasonably interpreted from the contract as a whole required the defendant Emery to make a good faith attempt to secure and to convey the Rises in Air allotment if possible or in the event he could not convey then to lease the same to the plaintiff, and such provision when related to the contract as a whole and the evi-

dence adduced were not merely an alternative method of payment available to defendant Emery nor an option which he could arbitrarily exercise or not without reason, at his own uncontrolled discretion or election."

The judgment was entered in April 1953 and granted defendant a period of six months thereafter to acquire the Bordeaux land, which the evidence discloses was still available, and transfer this land to plaintiff under the terms of the contract. The record discloses that defendant failed to comply with the terms of the judgment and execution issued on May 28, 1954.

We agree with the trial court that the fair construction of the contract viewed in the light of the facts and circumstances antecedent to and attendant upon its execution, required a good faith effort on the part of the defendant to acquire the Bordeaux land and convey it to plaintiff. The contract recites "the purchaser has purchased the Rises In the Air allotment from Mrs. Felix Bordeaux". It is apparent from this statement viewed in the light of the prior negotiations and the deal made with Mrs. Bordeaux that the parties understood that the transfer of the Bordeaux land to plaintiff was an essential part of the contract. However, to guard against any possible eventuality the "if and when" phrases were written into this paragraph. But these phrases were not as we view the evidence intended to relieve defendant from making every reasonable effort to complete the purchase from Mrs. Bordeaux as contemplated and as actually agreed upon, subject only to the approval of the authorities. As we read these "if and when" phrases they relate only to some contingency not forseen by the parties when the contract was executed. No such contingencies arose. As found by the trial court the reason for the failure of defendant to follow through and get title to this land was his declared purpose to "make Bachelor allow more" for the land than stipulated in the contract. That the parties considered the transfer of this Bordeaux land an essential part of the contract is further evidenced by the fact that after defendant delayed the final completion of the transaction with Mrs. Bordeaux to a point when

land values had substantially increased he recognized his obligation to complete the purchase and contacted defendant, who advanced the $1,180 then necessary to satisfy Mrs. Bordeaux.

With reference to the two other tracts of land referred to in the contract there was no representation that defendant had purchased such land, nor did defendant agree to sell this land to plaintiff if acquired. Obviously, defendant's obligation under the contract with reference to this land was essentially different than his obligation with reference to the Bordeaux land. It is reasonable to conclude that had defendant's obligation with reference to the Bordeaux land been only such as he contends, such obligation would have been expressed in the contract in language similar to that of these other tracts. The substance of appellant's contention is that he was not obligated by the contract to do anything with reference to the Bordeaux land. Such contention would have force if made with reference to these other two tracts, but because the language used relating to the two tracts is so entirely different from the language referring to the Bordeaux land, such contention loses its force when applied to the Bordeaux land.

The contract when read as a whole, against the background of plaintiff's insistence that he get more land before selling the Todd County land, and defendant's knowledge that the Bordeaux land was at least very important in connection with plaintiff's operation of the Mellette County ranch, and the discussions and negotiations with Mrs. Bordeaux and Department officials before the execution of the contract which defendant must have believed convinced plaintiff that the acquisition of the Bordeaux land was a practical certainty, quite emphatically deny appellant's contention that there was no obligation upon him to make a good faith effort to acquire the Bordeaux land and transfer it to plaintiff under the terms of the contract. Having failed to make a good faith effort to acquire this land appellant is in no posiiton to demand that the contract be enforced as if no such obligation existed.

We have considered appellant's other assignments of error and find them without merit.

The judgment appealed from is affirmed.

All the Judges concur.